UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DEMETRIUS HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00110-JPH-DLP |
| | ) | |
| COUNTER TERRORISM UNIT, | ) | |
| BOP DIRECTOR, | ) | |
| PROG. DIV. ASST. DIRECTOR, | ) | |
| IAN CONNERS, | ) | |
| KRUGER, | ) | |
| BRADLEY, | ) | |
| ALL KNOWN AND UNKNOWN BOP STAFF, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER SCREENING AMENDED COMPLAINT, DIRECTING SERVICE OF PROCESS, AND DENYING MOTION FOR DECLARATORY JUDGMENT

### I. Background

Plaintiff Demetrius Hill is a federal prisoner currently confined in the USP Thomson in Thomson, Illinois. He filed this action in the District of Columbia on November 5, 2019. Dkt. 1. On July 29, 2020, the action was transferred to the Northern District of Illinois. Dkt. 10. On February 24, 2021, the action was transferred to this Court. Dkt. 16.

On March 29, 2021, Mr. Hill filed an amended complaint. Dkt. 21. Because he has "struck out," he was directed to pay the entire filing fee, which he has done. Dkts. 20, 26.

### II. Screening of Amended Complaint

A.    *Legal Standards*

Because Mr. Hill is a "prisoner" as defined by 28 U.S.C. § 1915A(c), the Court has an obligation under § 1915A(a) to screen his amended complaint before service on any defendant. Pursuant to § 1915A(b), the Court must dismiss the complaint if it is frivolous or malicious, fails

1

to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the amended complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Pro se* complaints such as that filed by the plaintiff are construed liberally and held to "a less stringent standard than pleadings drafted by lawyers." *Cesal,* 851 F.3d at 720.

    B.    *Allegations*

The amended complaint names the following defendants: 1) Counter Terrorism Unit ("CTU") Director; 2) CTU Analyst Jane Doe; 3) Bureau of Prisons ("BOP") Director; 4) Prog. Asst. Div. Director; 5) Ian Connors, Inmate Appeals; 6) Former Warden and Regional Director Kruger; 7) Officer Jane Wheeler; 8) Lt. Sherman (SIS); 9) C.O. Clerget; 10) C.O. Politz; 11) C.O. Rumple; 12) Lt. Wingerd; 13) C.O. Tindell; 14) C.O. Mason; 15) C.O. Purcell; and 16) DHA Joseph (SMU hearing officer).

Mr. Hill alleges that he was confined at USP Terre Haute from February 2018 until he was transferred to the Communication Management Unit ("CMU") at FCI Terre Haute. Mr. Hill refers to himself as the "First Prophet King Demetrius." He calls his self-created religion "The 1stProphecy: Treason," or "The Way." He brings his claims under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1(b), and the First Amendment to the Constitution. He alleges that he has been denied the ability to practice his religion for three years. Dkt. 21 at 1.

Mr. Hill alleges that he has been anointed and blessed by Yahweh for Conquest and Dominion. Included in Mr. Hill's amended complaint is his description of what happened to him on February 21, 2018, when he allegedly heard the word of Yahweh, telling him to "lead my people in the 1st Prophecy against Amerika." Dkt. 21 at 19. Yahweh told Mr. Hill, "This is The 1st Prophecy: The Amerikan government must be overthrown!" *Id.* Then in a dream, seven angels anointed and blessed him and said, "King Demetrius we will guard u all the rest of ur days…" *Id.* They also informed him that "U have not been sent to bring Peace. U are sent to bring WAR to fulfil what was spoken by HE who was sent before u." *Id.* Mr. Hill goes into a lengthy description of various dates, numbers, and events he relates to his religion. *Id.* at 20-24. Mr. Hill seeks to fulfill "The 1st Prophecy: Treason."

Between February and July of 2018, Officer Clerget confiscated Mr. Hill's prayer rug and crown. *Id.* at 5. Lt. Sherman and Warden Kruger told Mr. Hill that every item in his possession and the clothes he was wearing at the time he was spoken to by Yahweh would be confiscated and destroyed to ensure that they did not become viewed as religious relics by Mr. Hill's followers. *Id.*, at 6. His religion was growing rapidly to numerous "Tru Believers." *Id.* at 3.

Mr. Hill alleges that he was targeted for typing up and passing out his religious scriptures to his "Tru Believers," also called "The 1st of the 1st komrades." *Id.* at 2. Officers Rumple, Clerget, Politz, and Allen searched his cell, confiscated his typed-up religious scriptures, and gave them to Lt. Sherman, who opened an SIS investigation. *Id.* at 3. Then Lt. Sherman, Warden Kruger, Assistant Warden Underwood, and the Captain used the religious scriptures to have Mr. Hill transferred to the CMU. *Id.*

The CMU is a housing unit in which the inmates' communications are extremely limited and closely monitored. Mr. Hill alleges that he was placed in that unit because it houses only 30-

40 inmates, so that he could not spread his faith to more inmates. *Id.* His emails to people in society about his religion were stopped from leaving the prison. *Id.* at 8. Research Intelligence Officer Jane Wheeler confiscated his typed-up scriptures after he transferred to the CMU and sent them to the CTU. *Id.* Officer Wheeler threatened to place Mr. Hill in the SHU if he baptized anyone in the CMU into "The 1st Prophecy: Treason." *Id.*

Mr. Hill contends that inmates who believe in other religions such as Christians, Muslims, and Satanists are allowed to proselytize, advocate, and grow their religions and that even Satanism is recognized by the BOP as a legitimate religion. *Id.* at 5. He asserts that none of these adherents have been investigated or transferred to a CMU. *Id.*

Mr. Hill further alleges that from July 2018 until October 13, 2021 (the Court assumes he means "October 13, 2020"), Lt. Sherman had him placed in the SHU because of his religious beliefs. *Id.* at 9. During this time, he was confined to his cell 23 hours a day, 5 days a week, and denied all his personal property except his legal materials. *Id.* When Mr. Hill continued to baptize new "komrades" who were in the SHU, he was placed on "recreation alone" and "cell alone" status. *Id.*

Lt. Wingerd, Officer Mason, Officer Purcell, and Officer Tindell attacked and beat him on September 21, 2018. *Id.* at 9-10. This assault was allegedly done to stop Mr. Hill from "doing the will of Yahweh by spreading 'The 1st Prophecy: Treason.'" *Id.* at 10.

Warden Kruger issued a memorandum prohibiting inmates from visiting other inmates in their cells in general population, but that the memo was only enforced against Mr. Hill, so that he could not prophesize to others in his cell. *Id.* at 11. When he was placed in the SHU in July 2018, during the SIS investigation, Lt. Sherman told all the "1st of the 1st komrades" that if they were let out of the SHU they would have to cover up their tattoos (of hammer and sickle) and denounce

"The 1st Prophecy: Treason" or else they would be placed back in the SHU and transferred. *Id.* at 10-11. Mr. Hill describes this as religious persecution. *Id.* at 12.

Mr. Hill was designated medical care level 3, but Dr. Elizabeth Trueblood colluded with several named defendants to change his designation to medical care level 2 so that he could be transferred to a secured unit at another facility. *Id.* at 15-16.

Finally, the hearing to determine whether Mr. Hill should be transferred to the secured unit was bogus and violated his due process rights. *Id.* at 17.

For relief, Mr. Hill seeks compensatory and punitive damages. He also seeks injunctive relief in the form of ordering the BOP to recognize "The 1st Prophecy: Treason" as a valid religion and providing chapel time, allowing visits from clergy, allowing communication between him and his komrades, as well as kosher meals and other demands.

Attached to the amended complaint are copies of records that reflect that the rationale behind Mr. Hill's transfer to the CMU was because he and another inmate had formed a group focused on organizing a movement to overthrow the government and recruiting new members.[1] Dkt. 21-2 at 1. The doctrine and writings of "The First Prophecy: Treason" were "viewed as contraband and could disrupt the orderly running of the institution." *Id.* at 3.

    C.   *Discussion*

1. <u>Claims Which Shall Not Proceed</u>

Mr. Hill's First Amendment free exercise claim is brought under *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388 (1971). Although recognizing a First Amendment claim under *Bivens* would be disfavored under *Ziglar v. Abassi*, 137 S. Ct. 1843, 1854

---

[1] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

(2017), the question in the Seventh Circuit is unsettled. *Smadi v. True,* 783 F. App'x 633, 634 (7th Cir. 2019) (reversing the dismissal of First Amendment *Bivens* claims where there was inadequate adversarial briefing by counsel); *Hass v. Noordeloos,* 792 F. App'x 405, 406 (7th Cir. 2020); *but see Fulks v. Watson*, No. 2:19-cv-00501-JPH-MJD, 2021 WL 1225922, at *4 (S.D. Ind. Mar. 31, 2021) (holding that inmate's "First Amendment retaliation claims present a new *Bivens* context" and dismissing those claims because no special factors warranted allowing them to proceed).

Nonetheless, even if allowed to proceed under *Bivens*, a prisoner's First Amendment rights to free exercise of religion are not unlimited. "In the prison context, such a burden is justified if it is reasonably related to a legitimate penological interest." *Neely-Bey Tarik-El v. Conley,* 912 F.3d 989, 1003 (7th Cir. 2019) (discussing First Amendment claim). "[T]he term 'penological interests' is most typically articulated in terms of a penal institution's interest in security…." *Id.*

"[T]he free exercise clause guarantees a liberty interest, a substantive right; it does not guarantee that all religious sects will be treated alike in all respects." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal quotation omitted). "[P]rison restrictions that infringe on an inmate's exercise of his religion are permissible if they are reasonably related to a legitimate penological objective, such as security and economic concerns." *Id.* at 719. "The court must balance [a prisoner's] right to be afforded a reasonable opportunity to exercise the religious freedom guaranteed by the First and Fourteenth Amendments against the legitimate penological goals of the prison." *Id.* "Within these confines, a prison is required to make only reasonable efforts to provide some opportunity for religious practice." *Id.* (internal quotation omitted). "This test is less restrictive than that ordinarily applied to infringements on constitutional rights in consideration of the need to give appropriate deference to prison officials, avoiding unnecessary judicial intrusion into security problems and other prison concerns." *Id.*

*Turner v. Safley*, 482 U.S. 78 (1987), establishes four factors that a court must consider in a free exercise claim: "(1) whether the restriction is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative means of exercising the right that remain open to the inmate; (3) what impact an accommodation of the asserted right will have on guards and other inmates; and (4) whether there are obvious alternatives to the restriction that show that it is an exaggerated response to penological concerns." *Kramer v. Pollard*, 497 F. App'x 639, 643 (7th Cir. 2012) (quoting *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009)). "The prison has a legitimate security interest in preventing prisoners from assuming any leadership authority over fellow inmates." *Id.* It is on this basis that it is reasonable for prisons to restrict inmates from leading their own religious services. *Id.*

In this case, the *Turner* factors weigh in favor of the defendants. The restrictions imposed on Mr. Hill are rational responses to any inmate attempting to recruit others to overthrow the government, whether in the name of religion or not. The Court can discern no acceptable alternative means of allowing Mr. Hill to engage in and encourage treason.

Mr. Hill's First Amendment claims are **dismissed for failure to state a claim upon which relief can be granted.**

Mr. Hill's second claim invokes his rights under RFRA. RFRA applies to federal prisoners and governs a federal inmate's claim that government actors interfered with the free exercise of his religion. *O'Bryan v. Bureau of Prisons,* 349 F.3d 399, 400 (7th Cir. 2003); 42 U.S.C. § 2000bb-1(b). RFRA provides, "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). RFRA permits recovery for damages

against federal officials in their individual capacities. *Tanzin v. Tanvir,* 141 S. Ct. 486, 493 (2020). Injunctive relief is also available. *Id.* at 489.

Mr. Hill's allegations support a claim that the defendants have imposed a substantial burden on his exercise of religion. Similar to his First Amendment claims, however, that is not the only question to consider.

It is apparent from the face of the amended complaint and the attachments thereto that the defendants restricted Mr. Hill's religious practice because it was viewed as potentially disruptive to the safe and secure administration of the prison. This is a compelling governmental interest. The act of treason is a serious crime. Mr. Hill's attempts to meet with and recruit others to promote efforts to overthrow the American government and act to bring about war rather than peace imposed serious dangers to the security of the prison.

Mr. Hill's contention that worshipping Satan is comparable to his religion is not persuasive. Worshipping Satan does not violate the Constitution or any federal law. Committing treason does. Mr. Hill may continue to believe that he has been anointed by Yahweh, but interests of prison safety and security do not allow him to meet with other inmates, pass out pamphlets, or otherwise promote his religion which is focused on overthrowing the government. His placement in the CMU, limiting his communication with others inside and outside the prison, and confiscating religious relics and typed up scriptures meant to be shared with other inmates, are reasonable responses to valid penological concerns.

As is true with respect to the First Amendment claims, the amended complaint and attachments thereto further reflect that because the entire basis of Mr. Hill's religion is to commit treason, there are no less restrictive methods that prison authorities could use to achieve the goal

of not allowing Mr. Hill to join forces with others in promoting his religion. His RFRA claims are **dismissed for failure to state a claim upon which relief can be granted.**

A plaintiff pleads himself out of court when his complaint shows he has no claim. *See Brown v. Peters*, 940 F.3d 932, 937 (7th Cir. 2019); *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016) ("A plaintiff can plead himself out of court by pleading facts that show that he has no legal claim.") (internal quotation omitted). That is the case here. Mr. Hill's First Amendment and RFRA claims are **dismissed** for failure to state a claim upon which relief can be granted.

Although the amended complaint mentions that Dr. Trueblood downgraded Mr. Hill's medical care level to allow him to be transferred, the amended complaint does not name Dr. Trueblood as a defendant nor does it identify any serious medical condition that required Mr. Hill to remain at a particular medical care level. Thus, no claim against Dr. Trueblood is proceeding.

Finally, Mr. Hill's claim that the hearing to determine whether he should be transferred to the CMU violated his due process rights is **dismissed for failure to state a claim upon which relief can be granted.** "In *Sandin v. Conner*, 515 U.S. 472 (1995), the Court explained that the Fourteenth Amendment provides inmates a liberty interest in avoiding transfer to more restrictive prison conditions if those conditions result in an atypical and significant hardship when compared to the ordinary incidents of prison life." *Townsend v. Cooper*, 759 F.3d 678, 685 (7th Cir. 2014) (citations and quotation marks omitted). "In assessing whether disciplinary segregation amounts to a constitutional violation, this court looks to 'the combined import of the duration of the segregative confinement and the conditions endured.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). "Although relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at

least in the absence of exceptionally harsh conditions, such an interest may arise from a long term of confinement combined with atypical and significant hardships." *Id.*; *see Kervin v. Barnes*, 787 F.3d 833, 837 (7th Cir. 2015) (noting that a "considerably shorter period of segregation [than six months] may, depending on the conditions of confinement and on any additional punishments, establish a [due process] violation").

Mr. Hill does not allege how long he was confined in the CMU. An exhibit attached to his amended complaint reflects that he was transferred there on October 11, 2018. Dkt. 21-2 at 1. He is now confined at the U.S. Penitentiary in Thomson, Illinois. Mr. Hill also fails to allege any conditions of the CMU other than that it was "oppressive," limited inmates' communication with others, and prevented him from recruiting followers for his campaign to overthrow the U.S. government. Dkt. 21 at 3.

While prison officials must periodically conduct informal and non-adversary reviews to ensure that administrative segregation does not become a pretext for indefinite confinement, *Isby v. Brown*, 856 F.3d 508, 525 ( 7th Cir. 2017), Mr. Hill does not allege that he has been held in secured housing for a prolonged period of time without meaningful periodic reviews.

Because Mr. Hill has failed to allege sufficient facts to plead a Fourteenth Amendment claim, that claim is **dismissed.**

2. Claim Which Shall Proceed

Mr. Hill's excessive force claim against defendants Wingerd, Mason, Purcell, and Tindell **shall proceed**. "After *Abbasi*, courts have split on whether failure-to-protect and excessive force claims present a new *Bivens* context." *Fulks v. Watson*, No. 2:19-cv-00501-JPH-MJD, 2021 WL 1225922, at *5 (S.D. Ind. Mar. 31, 2021). However, it would be inappropriate to dismiss the claim at screening. *See Smadi v. True*, 783 F. App'x 633, 634 (7th Cir. 2019) (reversing the dismissal of

First Amendment *Bivens* claims where there was inadequate adversarial briefing by counsel); *Hass v. Noordeloos*, 792 F. App'x 405, 406 (7th Cir. 2020).

### III. Pending Motion

Mr. Hill's motion for declaratory judgment, filed on March 31, 2021, asks the Court to order the BOP to recognize his religion and record it as "The 1st Prophecy: Treason" in the SENTRY computer system. For the reasons discussed herein, his motion, dkt. [22], is **denied.**

### IV. Conclusion and Service of Process

**The only claims proceeding in this action are claims of excessive force against** defendants Wingerd, Mason, Purcell, and Tindell. The **clerk is directed** to add Lt. Wingerd, C.O. Mason, C.O. Purcell, and C.O. Tindell as defendants on the docket and to terminate all other defendants on the docket.

This summary of remaining claims includes all the viable claims identified by the Court. All other claims have been dismissed. If Mr. Hill believes that additional claims were alleged in the amended complaint, but not identified by the Court, he shall have **through September 14, 2021,** in which to identify those claims.

The **clerk is directed**, pursuant to Fed. R. Civ. P. 4(c)(2), to issue process to defendants Wingerd, Mason, Purcell, and Tindell. Process shall consist of a summons. Because Mr. Hill is proceeding under the theory recognized in *Bivens*, 403 U.S. 388, **personal service is required**. *Robinson v. Turner,* 15 F.3d 82 (7th Cir. 1994). The Marshal for this District or his Deputy shall serve the summons, together with a copy of the amended complaint filed on March 29, 2021, dkt. [21], and a copy of this Order, on the defendants and on the officials designated pursuant to Fed. R. Civ. P. 4(i)(2), at the expense of the United States.

**SO ORDERED.**

Date: 8/18/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DEMETRIUS HILL
68133-053
THOMSON USP
USP Thomson
P.O. Box 1002
Thomson, IL 61285

United States Marshal
46 East Ohio Street
179 U.S. Courthouse
Indianapolis, IN 46204